UNITED STATES OF AMERICA
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | No. 20 CR 309-1 |
|---|---|
| v. | |
| LARRY JONES<br>also known as "Lil Larry" | Hon. Virginia M. Kendall |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Since at least 2016, LARRY JONES, a member of the Black P Stone Nation street gang, flooded the streets of Chicago with dangerous and illicit drugs, including cocaine, cocaine base, heroin, and fentanyl. JONES not only personally distributed these deadly drugs to his customers, he employed and worked with others—including co-defendants Jamar Spencer and Marsha Fountain—to cut, package, and sell drugs on his behalf. And as explained in greater detail below, JONES's drug trafficking enterprise had violent and sometimes fatal consequences. For these reasons, the government respectfully requests that the Court impose a within-Guidelines sentence of 188 months' imprisonment followed by four years of supervised release, which is sufficient but not greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a).

**I.   BACKGROUND**

On June 24, 2020, defendant was charged by indictment with eight counts of conspiracy to distribute and distribution of heroin (Counts One, Two, and Four through Nine) and one count of money laundering (Count Three). Dkt. 1. Defendant

was arrested on June 25, 2020, and arraigned on the same day. Dkt. 13. Defendant was released on bond on or about July 2, 2020. Dkt. 21.

On January 19, 2023, defendant pled guilty to Count One, which charged him with conspiracy to distribute heroin, in violation of 21 U.S.C. § 846, and Count Three, which charged him with money laundering, in violation of 18 U.S.C. § 1956(a)(3)(A) . Dkts. 173, 174.

## II. OFFENSE AND RELEVANT CONDUCT

Beginning on or about August 6, 2018, and continuing until on or about September 3, 2019, defendant conspired with co-defendants Jamar Spencer and Marsha Fountain, and others, to knowingly and intentionally possess with intent to distribute and distribute heroin. Specifically, between approximately August 2018 and September 2019, defendant worked with Fountain, Spencer, and others to sell quantities of heroin in and around Chicago. During this time, defendant directed Fountain to, among other things, store wholesale quantities of heroin, transport heroin to defendant and his associates, collect narcotics proceeds from Spencer and others who sold heroin supplied by defendant, and provide defendant with information she received from street level sellers and customers about the quality of the heroin that defendant supplied.

For example, on or about August 6, 2018, defendant placed a call to Fountain and asked her to bring him approximately 25 grams of heroin for defendant to sell to a customer who, unbeknownst to defendant and Fountain, was a confidential source ("CS") cooperating with law enforcement. Later that day, Fountain met with defendant and the CS in a vehicle parked on the 400 block of South Cicero Avenue in

Chicago. During that meeting, defendant cautioned Fountain about the presence of law enforcement in the area and asked Fountain if she brought "25 or 50" grams of heroin to the meeting. Fountain responded that she brought "25," which defendant understood to mean 25 grams of heroin. Fountain then handed a knotted plastic bag containing approximately 25 grams of heroin to defendant, and defendant then gave the heroin to the CS in exchange for $3,750. As discussed further below, $1,875 of the $3,750 paid by the CS to defendant was repayment for approximately 25 grams of heroin that defendant "fronted" to the CS on or about July 23, 2018.

During this same time period, defendant also sold quantities of heroin to Spencer that Spencer then sold to street-level customers. At defendant's sentencing hearing, we expect Spencer to testify that, between approximately October 2018 and April 2019, defendant sold 25-gram quantities to Spencer.[1] The 25-gram quantities of heroin that defendant sold to Spencer came in pre-packaged "bundles" containing approximately 14 or 15 "packs," with each pack containing a personal use quantity of heroin (approximately .1 grams). After defendant sold these bundles to Spencer, Spencer distributed that heroin at two drug spots controlled by defendant in the

---

[1] The government expects to call two witnesses—co-defendant Jamar Spencer and Dante Dockett—to testify at JONES's sentencing hearing. The government has provided *Giglio* and 3500 material for both witnesses, including reports of investigation for both witnesses, Dockett's grand jury transcript, and Dockett's trial testimony transcript from *United States v. Lee, et al.* 19 CR 641 (N.D. Ill.). On July 13, 2023, counsel for JONES filed a disclosure informing the Court that the government "declined to produce" pretrial sentence reports (PSR) for both Spencer and Dockett. Dkt. 195. First, JONES is not entitled Spencer and Dockett's PSRs because they do not contain *Brady* material. Second, and more importantly, the government is *prohibited* from disclosing the PSRs to JONES. *See* L.R. 32.1(j) ("The report *shall not* be disclosed to any person or agency without the written permission of the sentencing judge.) (emphasis added).

Austin neighborhood of Chicago: (1) the area near North Latrobe Avenue and West Chicago Avenue; and (2) the area on West Huron Street between North Pine and North Lotus Avenue. At times, defendant also directed Spencer to meet with one of defendant's other associates (Individual A) to deliver heroin to or collect narcotics proceeds from Individual A on defendant's behalf.

In addition to selling heroin to Spencer, defendant also sometimes directed Spencer to distribute heroin directly to defendant's customers. For example, on October 24, 2018, defendant directed Spencer to travel to the 3800 block of West Lake Street in Chicago to meet with the CS. During that meeting, Spencer gave the CS approximately 24.8 grams of heroin and received approximately $1,880 in narcotics proceeds from the CS, which Spencer then gave to defendant.

In addition to the August 6 and October 24, 2018, transactions described above, defendant sold approximately 124.3 grams of heroin to the CS over the span of five transactions that occurred between August 2018 and September 2019. Specifically, on or about August 15, 2018, defendant distributed approximately 24.8 grams of heroin to the CS; on or about September 19, 2018, defendant distributed approximately 25 grams of heroin to the CS; on or about December 18, 2018, defendant distributed approximately 24.9 grams of heroin to the CS; on or about February 20, 2019, defendant distributed approximately 25 grams of heroin to the CS; and on or about September 3, 2019, defendant distributed approximately 24.5 grams of heroin to the CS. Defendant received $9,385 in connection with those transactions.

In addition to the transactions charged in the indictment, we expect that Spencer will testify about his history with defendant and narcotics transactions with defendant that started in approximately 2016. We expect Spencer will testify that, in total, defendant possessed with intent to distribute and distributed at least 85 grams of cocaine base; at least 160 grams of fentanyl-laced heroin; more than 5 kilograms of heroin; and approximately 12 kilograms of marijuana.

Aside from the staggering amount of narcotics possessed and sold by defendant over the course of the conspiracy, defendant also laundered money as part of his drug trafficking enterprise. Specifically, on August 6, 2018, during the narcotics transaction between the CS and defendant described above, defendant received approximately $3,750 in payment from the CS. Approximately $1,875 of that total represented payment to defendant for narcotics previously supplied by defendant to the CS on or about July 23, 2018. Defendant accepted payment for the purpose of promoting and maintaining his drug dealing relationship with the CS.

### III.   GUIDELINES CALCULATIONS

The government agrees with Probation's calculation of the applicable Guidelines: total offense level of 31, criminal history category IV, which results in an advisory Guidelines range of 151 to 188 months' imprisonment.

*Offense Level*

The government agrees with Probation that the base offense level is 32, pursuant to Guidelines § 2D1.1(a)(5), because the offense of conviction and relevant conduct involved more than 3,000 kilograms, but less than 10,000 kilograms, of converted drug weight. Probation also correctly applied a two-level enhancement to

5

account for defendant's leadership role in the drug enterprise, resulting in a total offense level of 34.[2] Moreover, defendant has clearly accepted responsibility for the offense of conviction. Defendant has also admitted that, prior to the offense of conviction, he engaged in other narcotics trafficking offenses with co-defendant Spencer. However, defendant has maintained that Spencer—and by extension, the government—has overstated the quantity of narcotics trafficked by defendant and Spencer during the relevant time period. Nevertheless, if the Court finds that defendant has accepted responsibility, he is entitled to a three-level reduction, resulting in a total offense level of 31.

*Criminal History*

With respect to defendant's criminal history, the plea agreement anticipated that defendant would be assessed 0 criminal history points, resulting in a criminal history category of I, based, in large part, on the age of defendant's prior convictions. However, with the benefit of the PSR and additional records located by the Probation Officer, the government agrees that defendant's criminal history points actually equal seven, resulting in a criminal history category of IV.

Specifically, the plea agreement did not include the following convictions: defendant's 1997 attempted murder conviction in the Circuit Court of Cook County possession of a controlled substance offense in the Circuit Court of Cook County (PSR ¶ 40); and defendant's 2002 possession of a controlled substance conviction in the

---

[2] Because Counts One and Three are grouped together for guideline calculation purposes, the two-level enhancement applied by the government in the plea agreement, which brought the offense level to 36, should be disregarded. PSR ¶ 20.

6

Circuit Court of Cook County (PSR ¶ 43). As set forth in the PSR, defendant receives seven criminal history points for these convictions.

Accordingly, it is the government's position that based on a total offense level of 31 (assuming acceptance credit is granted) and criminal history category of IV, the applicable Guidelines range is 151 to 188 months' imprisonment.

### IV. THE § 3553 FACTORS SUPPORT WITHIN-GUIDELINES SENTENCE OF 188 MONTHS' IMPRISONMENT

Criminal sentencing has four purposes – retribution, deterrence, incapacitation, and rehabilitation. *United States v. Milbourn*, 600 F.3d 808, 812 (7th Cir. 2010). Section 3553(a) requires the court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing. In order to determine the particular sentence to impose, the Court must consider the familiar statutory factors listed in § 3553(a)(1)-(7). One of those factors is the advisory range set by the Sentencing Guidelines, and another is the Commission's policy statements. *See* § 3553(a)(4), (a)(5). Although the Sentencing Guidelines are advisory only, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 522 U.S. 38, 128 S. Ct. 586, 596 (2007). For two reasons, this Court should give serious consideration to the advisory Guidelines range.

*First*, the Sentencing Guidelines are the sole factor in § 3553(a) that provides any objective sentencing range that can practicably promote the overall goal of minimizing unwarranted sentencing disparities, which is itself a statutorily-mandated factor, § 3553(a)(6). *See United States v. Mykytiuk*, 415 F.3d 606, 608 (7th

7

Cir. 2005) ("The Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country."); *see also Booker v. United States*, 543 U.S. 220, 250 (2005) ("Congress' basic statutory goal – a system that diminishes sentencing disparity"); *id*. at 253 ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity"); *id*. at 267 (rejecting other remedial alternatives because they were inconsistent with the "basic objective of promoting uniformity in sentencing"). The Supreme Court created the advisory system to "continue to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individual sentences where necessary." *Booker*, 543 U.S. at 264-65. The only way to prevent widespread unwarranted disparities is to give serious weight to the Guidelines.

*Second*, the Guidelines deserve meaningful consideration because they are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall*, 128 S. Ct. at 594. It is true that there is no "presumption" that a Guidelines sentence is the "correct" sentence, *Rita v. United States*, 551 U.S. 338, 351 (2007), and that there is "broad" sentencing discretion post-*Booker*. *United States v. Demaree*, 459 F.3d 791, 794-95 (7th Cir. 2006). However, the Commission is "a respected public body with access to the best knowledge and practices of penology; its judgments should not lightly be disregarded." *United States v. Wachowiak*, 496 F.3d 744, 753 (7th Cir. 2007) (internal quotation and citation omitted). Furthermore, the Commission is charged by statute

8

to periodically review and revise the Guidelines as the Commission collects comments and data from numerous sources in the criminal justice system. *See* 28 U.S.C. § 994(o). These ongoing efforts to refine the Guidelines are another reason seriously to consider the advisory range.

Here, a careful consideration of the § 3553(a) factors weigh in favor of a 188-month sentence, the high end of the applicable Guidelines range.

### A. The Seriousness of the Offense and the History and Characteristics of the Defendant

The nature and circumstances of defendant's offense conduct is incredibly serious. The Court is well aware of the dangers of narcotics on individual users, their families and their communities. In short, drug use and addiction are causing the deterioration of whole neighborhoods in Chicago, and the narcotics distribution business brings consequences beyond the narcotics themselves, including the increase in violence and homicides in many of the district's communities. As explained in more detail below, defendant's drug trafficking activities contributed to the violence on the west side of Chicago.

As noted in the PSR, defendant is a member of the Black P Stone Nation street gang. PSR ¶ 10. Although defendant disagrees with that designation, testimony from co-defendant Spencer (a fellow Black P Stone) and Dante Dockett will dispel any doubt from the Court. We expect that Dockett will testify that he has known defendant for almost his entire life and knew defendant to be a drug dealer and member of the Black P Stones. Dockett will also testify that, although defendant was

a Black P Stone and Dockett a Traveling Vice Lord, Dockett occasionally purchased quantities of heroin and crack cocaine from defendant starting sometime in 2016.

The government expects that Dockett will testify about an instance in which defendant confided in Dockett in or around December 2016, he suspected that two young members of the Traveling Vice Lords—later identified as Derrick Jones and Stephen Tucker—robbed a stash house where defendant kept some of his contraband. Because Dockett was an elder member of the same gang as Jones and Tucker, he attempted to help defendant retrieve some of his property. However, Jones and Tucker refused to speak with Dockett and return defendant's property. As a result, Dockett murdered them both. *See United State v. Lee, et al.*, 19 CR 641 (N.D. Ill.), Dkt. 475 (Dockett Plea) at 9-10.[3] A senseless and callous act of violence carried out by Dockett and made possible by defendant's drug trafficking activities.

In addition to the murders of Jones and Tucker in December 2016, the government also expects that Dockett will testify about a murder stemming from defendant's drug trafficking activities that occurred in February 2017. Specifically, we expect Dockett will testify that in February 2017, defendant called Dockett and asked Dockett to participate in a drug transaction—either by delivering drugs or picking up drug money—with another of defendant's drug trafficking associates, Individual TB. When Individual TB and Dockett arrived at their destination, Individual TB exited the car with a loaded weapon and fired several shots. A short time later, Dockett drove to where Individual TB was located and saw Individual TB

---

[3] JONES is referenced in the plea agreement as "Individual LJ."

fighting with an individual later identified as Antoine Watkins. Individual TB and Dockett then worked together to murder Watkins. *See United State v. Lee, et al.*, 19 CR 641 (N.D. Ill.), Dkt. 475 (Dockett Plea) at 13-16. We expect that Dockett will testify that Individual TB called defendant shortly after the encounter with Watkins and explained the situation. Defendant then directed Dockett to follow Individual TB to make sure Individual TB was able to make it home without being stopped by police.

The sprawling nature of defendant's drug trafficking enterprise here is evidenced by the multiple transactions charged in this case (to which defendant admitted), by the expected testimony of co-defendant Spencer, and are corroborated by testimony already provided by Dockett. And the seriousness of defendant's drug trafficking crimes cannot be overstated. Although not charged with any violent acts in this particular case, defendant's proximity to—and tacit approval of—violence is disturbing and must be accounted for in his sentence. At least three people are dead, and their deaths can be traced directly to defendant's drug trafficking. A within-Guidelines sentence of 188 months' imprisonment is appropriate, but not greater than necessary, to adequately account for the seriousness of the offense and the seriousness of defendant's criminality.

**B.     The Need to Protect the Public and for General Deterrence**

At 42 years old, defendant has not aged out of criminality. Defendant needs to be incapacitated for a significant period of time to protect the community from further harm. Defendant's prior sentences and his proximity to violence has done nothing to

deter defendant from engaging in his criminal lifestyle. Defendant's history and conduct in this case show that he is unlikely to be adequately deterred from future criminal conduct by a below-Guidelines sentence—let alone a five-year sentence—from this Court. Rather, a significant sentence, one at the high end of the Guidelines, will be sufficient but not greater than necessary in order to protect the public from defendant's disdain for, and inability to abide by, the rule of law. In addition, a 188-month sentence will promote respect for the law by sending a clear message that those who seek to distribute deadly narcotics and be complicit in violent behavior in furtherance of those drug trafficking crimes will be held to account for their conduct.

V.  **CONDITIONS OF SUPERVISED RELEASE**

Supervised release is extremely important in this case. The government agrees with all of the mandatory and discretionary and special conditions of supervised release recommended by Probation. All of these conditions should be imposed on the basis that they will facilitate supervision by the probation officer, promote defendant's respect for the law, and deter him from committing future crimes. Lastly, the conditions will support defendant's rehabilitation and reintegration into the community, ensure that he is engaged in lawful pursuits upon release from prison, in light of defendant's history and characteristics.

## VI. CONCLUSION

Based on the foregoing, the government respectfully requests that this Court sentence defendant to 188 months' imprisonment and 4 years of supervised release.

          Respectfully submitted,

          MORRIS PASQUAL
          Acting United States Attorney

By:   s/ *Jimmy L. Arce*
      JIMMY L. ARCE
      JOHN D. MITCHELL
      Assistant United States Attorneys
      219 South Dearborn Street
      Chicago, IL 60604
      (312) 353-8449

Dated: July 13, 2023